# EXHIBIT 4

# COMPLAINT

Shane W. Clayton (15576)
Elijah L. Milne (11171)
DURHAM JONES & PINEGAR, P.C.
192 East 200 North, Third Floor
St. George, UT 84770
(435) 674-0400
(435) 628-1610 fax
sclayton@djplaw.com
emilne@djplaw.com
*Attorneys for Plaintiff*
50041.075

IN THE FIFTH JUDICIAL DISTRICT COURT
IN AND FOR WASHINGTON COUNTY, STATE OF UTAH

| | |
|---|---|
| STAKER & PARSON COMPANIES, INC., d/b/a WESTERN ROCK PRODUCTS, a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SCOTTSDALE INSURANCE COMPANY, an Ohio corporation; COLORADO CASUALTY INSURANCE COMPANY, a New Hampshire corporation; HANCOCK-LEAVITT INSURANCE AGENCY, INC., an Arizona corporation; DOE INDIVIDUALS 1-10, unknown individuals; and ROE ENTITIES 1-10, unknown entities,<br><br>Defendants. | **Complaint**<br><br>Case No. 180500034<br>Judge Eric A. Ludlow<br>Tier 3 |

Plaintiff Staker & Parson Companies Inc. ("*Staker*"), alleges and complains as follows against Defendant Scottsdale Insurance Company ("*Scottsdale*"), Defendant Colorado Casualty Insurance Company ("*Colorado Casualty*"), Defendant Hancock-Leavitt Insurance Agency Inc. ("*Hancock-Leavitt*"), Defendants Doe 1-10, and

Defendants Roe Entities 1-10. (Scottsdale and Colorado Casualty are sometimes referred to herein collectively as the "*Carriers*.")

## JURISDICTION AND VENUE

1. Staker is a Utah corporation, which at all times relevant hereto was located in the State of Utah.

2. Scottsdale, a.k.a. Nationwide, is an Ohio corporation that transacts business in the State of Utah.

3. Scottsdale contracted to insure Staker.

4. Colorado Casualty, a.k.a. Liberty Mutual, is a New Hampshire corporation that transacts business in the State of Utah.

5. Colorado Casualty contracted to insure Staker.

6. Hancock-Leavitt, a.k.a. the Leavitt Group, is an Arizona corporation that transacts business in the State of Utah and maintains its corporate offices in the State of Utah.

7. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants "Doe 1-10" inclusive and Defendants "Roe Entities" 1-10 inclusive are presently unknown. These are responsible for damages Staker has suffered. Therefore, Staker sues these defendants by such fictitious names. Staker will ask leave to amend this complaint to show the true names and capacities of each of these defendants at such time as the same is ascertained.

8. The acts alleged herein caused injury to Staker in the State of Utah.

9. This Court has jurisdiction over the parties and actions alleged herein.

10. Venue is properly before this Court.

11. Staker's damages are such as to qualify for "Tier 3" under Utah R. Civ. P. 26(c)(3).

## GENERAL ALLEGATIONS*

12. Staker realleges and incorporates herein all of the foregoing allegations.

**A. BDR and the Haul Agreement.**

13. Staker operates sand and gravel mines.

14. Staker entered into a contract (the "*Haul Agreement*") with Blake Reidhead Inc., d/b/a BDR Transport, ("*BDR*") in which BDR agreed to perform the work (the "*Work*") of hauling rocks in tractor-trailer trucks owned and operated by BDR.

15. Paragraph 5(b) of the Haul Agreement states:

[BDR] warrants and guarantees that all Work rendered, performed or furnished by [BDR] under this Agreement shall be performed in a good and workmanlike manner in accordance with the best standard practices and in a manner protective of its employees, the public and the environment....

16. Similarly, Paragraph 12(a) of the Haul Agreement states:

[BDR] agrees to comply with ... any and all ... applicable safety and health laws, standards and regulations, ... and all other applicable laws, regulations, guidelines, permits, licenses and approvals concerning performance of the Work and services hereunder ....

17. Paragraph 7 of the Haul Agreement requires BDR "to protect, indemnify, hold harmless and defend [Staker] ... from and against all losses, damages, demands, claims, suits, and other liabilities, including attorney fees and other expenses of litigation," related to the Work.

18. Paragraph 8 of the Haul Agreement states:

INSURANCE. Without limiting, negating or reducing [BDR's] undertaking to protect, indemnify, hold harmless, reimburse and defend [Staker] and other

---

* Allegations and claims in this complaint may be considered and construed as if set forth in the alternative under Utah. R. Civ. P. 8(e) and (f).

parties as provided in Paragraph 7 hereof, and as part of the consideration for any sums paid [BDR] by [Staker] hereunder, [BDR] shall at its own cost and expense procure and keep in force and effect throughout the term of this Agreement the insurance listed below with insurance carrier(s) acceptable to [Staker]. Before commencing Work, [BDR] shall furnish [Staker] with Certificates of Insurance attested by a duly authorized representative of the insurance carrier(s) evidencing: (i) that the insurance required hereunder is in force and effect; (ii) that such insurance will not be canceled or materially changed without giving to [Staker] at least 30 days prior written notice; (iii) that [Staker] is named as an additional insured party; and (iv) that all rights of subrogation against [Staker] are waived....

19.  Paragraph 8 lists the following types of insurance:

(a) Worker's Compensation and Employer's Liability Insurance: ... [BDR] shall carry Employer's Liability Insurance covering all operations and Work hereunder in an amount not less than $1,000,000 per occurrence. Unless prohibited by applicable law, such Worker's Compensation and Employer's Liability Insurance shall expressly provide that all rights of subrogation against [Staker] are waived.
(b) Comprehensive General Liability - $1,000,000 per occurrence for all liability arising out of injury to or death of one or more persons, in any one occurrence, and $1,000,000 for all liability arising out of damage to or destruction of property, including loss of use thereof and downtime, in any one occurrence and with a General Annual Aggregate not less than $2,000,000; with excess umbrella limits of at least $1,000,000;
(c) Automobile Liability Insurance on all motor vehicles owned, hired, or non-owned, which may be used or connected with any of the work hereunder, with limits of not less than $1,000,000 for all liability arising out of injury to or death of one or more persons, in any one occurrence, and $1,000,000 for all liability arising out of damage to or destruction of property, including loss of use thereof and downtime, in any one occurrence.

20. Paragraph 8 of the Haul Agreement further states:

The policy or policies providing for such insurance shall be endorsed to specifically include the liability assumed by [BDR] under this Agreement in Paragraph 7 above in the amounts shown in this Paragraph 8. In addition, such insurance shall specifically name [Staker] as an additional insured party and shall be primary to any and all other insurance of [Staker] with respect to any and all claims and demands which may be made against [Staker] for bodily injury or death resulting therefrom, including injury to or death to [Staker], its employees, workmen, agents and servants, and for property damage, including damage to [Staker's] or [BDR's] property, caused by, or alleged to have been caused by, any act, omission or default, negligent or otherwise, of [BDR] by reason of operations or Work hereunder. Such insurance shall specifically provide that it applies separately to each insured against which claim is made or

suit is brought, except with respect to the limits of the insurer's liability, and that all rights of subrogation against [Staker] are waived.

21. Paragraph 8 of the Haul Agreement concludes: "The above insurance requirements are minimum requirements and shall not limit [BDR's] liability to [Staker] in any manner."

**B. The Accident and Lawsuit.**

22. On January 29, 2014, BDR's employee William L. Baughn was accidentally injured while performing the Work for BDR (the "*Accident*").

23. As a result of the Accident, Baughn filed a lawsuit (the "*Lawsuit*") against Staker and BDR on January 29, 2015.

24. However, because workers' compensation was Baughn's exclusive remedy against his employer, Baughn did not bring a claim for negligence against BDR in the Lawsuit.

25. On June 14, 2016, at the conclusion of a jury trial in the Lawsuit, the jury announced a verdict in favor of Baughn for damages in the total amount of $2,550,000, apportioned as follows: 25% to Baughn, 60% to Staker, and 15% to BDR.

**C. Scottsdale and the AL Policy.**

26. Prior to the Accident, Scottsdale issued one or more automobile liability policies of insurance to BDR, including policy no. OPS0062348. (Such policies are referred to herein, both individually and collectively, as the "*AL Policy*.")

27. The AL Policy names "Western Rock Products, 851 N Red Rock Road, St. George, UT 84770," as an additional insured under that policy.

28. Western Rock Products is a registered d/b/a of Staker in the State of Utah.

29. Staker does business as Western Rock Products at 851 N. Red Rock Rd., in St. George, Utah.

30. Because Staker is an additional insured under the AL Policy, Scottsdale was obligated to defend and indemnify Staker for all claims asserted against it in the Lawsuit.

31. On February 11, 2015, Staker sent a letter tendering its indemnity and defense in the Lawsuit to Scottsdale.

32. On March 26, 2015, Scottsdale sent a letter to Staker refusing to defend and indemnify Staker under the AL Policy in the Lawsuit.

33. On July 11, 2016, Staker sent a second letter tendering its indemnity and defense in the Lawsuit to Scottsdale.

34. On July 29, 2016, Scottsdale sent a letter to Staker again refusing to defend and indemnify Staker under the AL Policy.

35. On August 16, 2016, Staker sent a third letter tendering its indemnity and defense in the Lawsuit to Scottsdale.

36. Although Scottsdale acknowledged receipt of Staker's August 16, 2016 letter, Scottsdale never responded to this letter, despite Staker's requests that Scottsdale do so.

37. Scottsdale has taken the position that the AL Policy does not provide coverage to Staker for any liability arising out of an injury at issue in the Lawsuit.

38. Although Scottsdale initially refused to provide coverage for BDR under the AL Policy, Scottsdale subsequently assumed BDR's defense in the Lawsuit.

39. On information and belief, Scottsdale is defending BDR in the Lawsuit.

40. On information and belief, Staker, as an additional insured, should be afforded the same rights and privileges as BDR by Scottsdale under the AL Policy.

41. Scottsdale has never defended or indemnified Staker in connection with the Lawsuit.

42. As a result of Scottsdale's failure and refusal to indemnify and defend Staker in the Lawsuit, Staker has been forced to expend hundreds of thousands of dollars to defend itself in the Lawsuit without participation from Scottsdale.

43. Scottsdale has wrongfully and unreasonably declined Staker's requests for indemnity and a defense.

44. At all times relevant herein, Scottsdale chose to put its own interests above those of its insured, Staker.

45. At all times relevant herein, Scottsdale, knowing that it should defend and indemnify Staker, acted with oppression and malice by declining to defend Staker, specifically to enrich itself at the expense of Staker.

46. Staker is entitled to punitive damages for the aforementioned oppressive and malicious conduct of Scottsdale.

47. Additionally, Staker seeks to recover its attorney fees and costs from Scottsdale for the necessity of filing this lawsuit to collect policy benefits to which it is entitled.

48. Scottsdale may have issued other policies to BDR that name Staker as an additional insured. If there is coverage for Staker under any such policies, Staker hereby asserts the right to a defense and indemnity under such policies.

**D. Colorado Casualty and the CGL Policy.**

49. Prior to the Accident, Colorado Casualty issued one or more comprehensive general liability policies of insurance, including at a minimum policy no. 8529057, to

BDR. (Such policies are referred to herein, both individually and collectively, as the "*CGL Policy.*")

50. The CGL Policy names "Staker & Parson Companies, PO Box 3429, Ogden, UT 84409," as an additional insured under that policy.

51. Because Staker is an additional insured under the CGL Policy, Colorado Casualty was obligated to defend and indemnify Staker for all claims asserted against it in the Lawsuit.

52. On February 11, 2015, Staker sent a letter tendering its indemnity and defense in the Lawsuit to Colorado Casualty.

53. On March 18, 2015, Colorado Casualty sent a letter to Staker refusing to defend and indemnify Staker under the CGL Policy in the Lawsuit.

54. On July 11, 2016, Staker sent a second letter tendering its indemnity and defense in the Lawsuit to Colorado Casualty.

55. On July 12, 2016, Colorado Casualty sent a letter to Staker again refusing to defend and indemnify Staker under the CGL Policy.

56. Colorado Casualty has taken the position that the CGL Policy does not provide coverage to Staker for any liability arising out of an injury at issue in the Lawsuit.

57. As a result of Colorado Casualty's failure and refusal to indemnify and defend Staker in the Lawsuit, Staker has been forced to expend hundreds of thousands of dollars to defend itself in the Lawsuit without participation from Colorado Casualty.

58. Colorado Casualty has wrongfully and unreasonably declined Staker's requests for indemnity and a defense under the CGL Policy.

59. At all times relevant herein, Colorado Casualty chose to put its own interests above those of its insured, Staker.

60. At all times relevant herein, Colorado Casualty, knowing that it should defend and indemnify Staker, acted with oppression and malice by declining to defend Staker, specifically to enrich itself at the expense of Staker.

61. Staker is entitled to punitive damages for the aforementioned oppressive and malicious conduct of Colorado Casualty.

62. Additionally, Staker seeks to recover its attorney fees and costs from Colorado Casualty for the necessity of filing this lawsuit to collect policy benefits to which it is entitled.

63. Colorado Casualty may have issued other policies to BDR that name Staker as an additional insured. If there is coverage for Staker under any such policies, Staker hereby asserts the right to a defense and indemnity under such policies.

**E.  Hancock-Leavitt and the Broker Agreement.**

64. Upon information and belief, Hancock-Leavitt agreed with BDR (the "*Broker Agreement*") to procure all insurance required in the Haul Agreement for both BDR and Staker.

65. Staker was an intended third-party beneficiary of the Broker Agreement between Hancock-Leavitt and BDR.

66. Hancock-Leavitt represented that it had procured all insurance required in the Haul Agreement.

67. Upon information and belief, Hancock-Leavitt failed to procure all insurance required in the Haul Agreement for both BDR and Staker.

68. Hancock-Leavitt procured the AL Policy and the CGL Policy (collectively, the *"Policies"*) and caused insurance certificates and endorsements to be issued to Staker identifying Staker as an additional insured under the Policies.

69. Staker relied on the Policies and Hancock-Leavitt's representations, including the issuance of the above-mentioned certificates and endorsements, in deciding to contract, and to continue to contract, with BDR for the Work.

70. Based on the issuance of the Policies and these certificates and endorsements, Staker tendered its defense to the Carriers on multiple occasions.

71. With Hancock-Leavitt and Scottsdale taking conflicting positions with respect to Staker's status as an additional insured on the AL Policy, Staker has been forced to file suit against both to determine the truth and, ultimately, to recover for the fees, costs, and other losses incurred in both the Lawsuit and the instant action.

## FIRST CAUSE OF ACTION
### Breach of Contract
### (Against All Defendants)

72. Staker realleges and incorporates herein all of the foregoing allegations.

73. Staker entered into one or more insurance contracts with the Carriers by virtue of the policies issued which name Staker as an additional insured.

74. The Carriers breached the policies when they denied Staker's tenders, failed to timely respond to those tenders, or failed to respond at all to those tenders.

75. Hancock-Leavitt breached the Broker Agreement and its obligation to Staker as an intended third-party beneficiary by failing to procure and maintain all required

insurance and issuing insurance certificates and endorsements that Hancock-Leavitt purportedly had no authority to issue.

76. As a direct and proximate cause of the Defendants' breaches, Staker has been damaged in an amount to be proved at trial.

77. Staker has been required to retain the services of attorneys to prosecute this claim and recover policy benefits, and Staker is entitled to recover reasonable attorney fees and other costs incurred in this litigation as special damages, in addition to any other relief to which it may be entitled.

78. Staker is entitled to indemnity from the Defendants.

## SECOND CAUSE OF ACTION

### Promissory Estoppel

### (Against All Defendants)

79. Staker realleges and incorporates herein all of the foregoing allegations.

80. Hancock-Leavitt and the Carriers each made one or more promises to Staker related to the policies issued.

81. For example, Hancock-Leavitt and the Carriers represented to Staker that, among other things, (i) Staker was an additional insured under the Policies, (ii) coverage under the Policies was primary and noncontributory, and (iii) the Policies provided all coverage required in the Haul Agreement.

82. Staker acted with prudence and in reasonable reliance on each of these promises.

83. Hancock-Leavitt and the Carriers each reasonably expected, or should have so expected, such promises to induce action or forbearance on the part of Staker or a third person.

84. Hancock-Leavitt and the Carriers each knew that Staker relied on such promises.

85. At all relevant times, Hancock-Leavitt and the Carriers knew, or should have known, all material facts related to such promises.

86. Staker's reliance on such promises resulted in a loss to Staker for which Hancock-Leavitt and the Carriers are liable.

### THIRD CAUSE OF ACTION

#### Tortious and Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing

#### (Against All Defendants)

87. Staker realleges and incorporates herein all of the foregoing allegations.

88. A covenant of good faith and fair dealing is implied in every contract, including the policies referred to above.

89. The Carriers breached the implied covenant of good faith and fair dealing in various ways, including but not limited to, denying Staker's tenders, failing to timely respond to those tenders, failing to respond at all to those tenders, and otherwise performing in a manner unfaithful to the terms of the policies.

90. Hancock-Leavitt breached its duty of good faith and fair dealing by, among other things, knowingly withholding information or providing false or misleading information to Staker and others with respect to the nature of the insurance coverage procured for BDR and Staker.

91. As a direct and proximate cause of the Defendants' breaches, Staker has been damaged in an amount to be proved at trial.

92. Staker has been required to retain the services of attorneys to prosecute this claim and recover policy benefits, and Staker is entitled to recover reasonable attorney fees and other costs incurred in this litigation as special damages, in addition to any other relief to which it may be entitled.

93. Staker is entitled to recover punitive damages against the Carriers for their oppressive, malicious, and/or fraudulent conduct as described herein.

## FOURTH CAUSE OF ACTION

### Declaratory Relief

### (Against the Carriers)

94. Staker realleges and incorporates herein all of the foregoing allegations.

95. There exists between Staker and the Carriers a justifiable controversy regarding the rights and obligations of the parties under the respective policies, specifically, but not limited to, whether the Carriers should have defended and indemnified Staker.

96. Staker seeks a declaratory judgment to resolve this controversy.

97. This action presents a justifiable controversy related to the obligations, rights, and limitations to the parties under the respective policies.

98. Staker and the Carriers have adverse interests in this matter.

99. Staker asserts a legally protectable interest that is ripe for determination.

100. Staker has been required to retain the services of attorneys to prosecute this claim and recover policy benefits, and Staker is entitled to recover reasonable attorney

fees and other costs incurred in this litigation as special damages, in addition to any other relief to which it may be entitled.

## FIFTH CAUSE OF ACTION

### Fraudulent or Intentional Misrepresentation

### (Against Hancock-Leavitt)

101. Staker realleges and incorporates herein all of the foregoing allegations.

102. Upon information and belief, Hancock-Leavitt made false representations by, among other things, providing information and issuing certificates and endorsements representing that Staker is an additional insured on the Policies.

103. Hancock-Leavitt knew or believed that its representations were false or that it had an insufficient basis of information for making such representations.

104. Hancock-Leavitt intended to induce Staker to act or refrain from acting based upon these representations.

105. Staker justifiably relied on these representations to its detriment.

106. As a direct and proximate cause of Hancock-Leavitt's conduct, Staker has been damaged in an amount to be proved at trial.

107. Staker has been required to retain the services of attorneys to prosecute this claim and recover policy benefits, and Staker is entitled to recover reasonable attorney fees and other costs incurred in this litigation as special damages, in addition to any other relief to which it may be entitled.

108. Staker is entitled to recover punitive damages against Hancock-Leavitt for Hancock-Leavitt's oppressive, malicious, and/or fraudulent conduct as described herein.

## SIXTH CAUSE OF ACTION

## Negligent Misrepresentation and Nondisclosure

## (Against Hancock-Leavitt)

109. Staker realleges and incorporates herein all of the foregoing allegations.

110. Hancock-Leavitt failed to disclose and misrepresented material information regarding Staker's insurance coverage.

111. Hancock-Leavitt was under a duty to Staker to exercise reasonable care to accurately disclose this information.

112. Hancock-Leavitt knew that the failure to accurately disclose this information may justifiably induce Staker to act or refrain from acting based upon the absence of this information.

113. Hancock-Leavitt also supplied false information for the guidance of BDR and Staker in business transactions by, among other things, preparing and issuing certificates and endorsements representing that Staker is an additional insured.

114. Hancock-Leavitt failed to exercise reasonable care or competence in obtaining or communicating this information.

115. Hancock-Leavitt knew or believed that BDR intended to supply this information for the benefit and guidance of Staker and to induce Staker to retain BDR to perform the Work.

116. Staker justifiably relied on this information and suffered pecuniary loss as a result.

117. Staker has been required to retain the services of attorneys to prosecute this claim and recover policy benefits, and Staker is entitled to recover reasonable attorney

fees and other costs incurred in this litigation as special damages, in addition to any other relief to which it may be entitled.

## SEVENTH CAUSE OF ACTION
### Professional Negligence
### (Against Hancock-Leavitt)

118. Staker realleges and incorporates herein all of the foregoing allegations.

119. Pursuant to the Broker Agreement, Hancock-Leavitt contracted with BDR to procure insurance coverage for Staker as an additional insured and as required under the Haul Agreement.

120. Staker was an intended third-party beneficiary of the Broker Agreement.

121. Hancock-Leavitt had a duty as an insurance professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise.

122. Hancock-Leavitt, in furtherance of its obligations to BDR and Staker under the Broker Agreement, provided false and erroneous information and certificates and endorsements purportedly naming Staker as an additional insured for the Work, which certificates and endorsements Scottsdale now claims it did not approve and were not authorized to be issued.

123. By erroneously providing false information and certificates and endorsements naming Staker as an additional insured for the Work, Hancock-Leavitt failed to exercise reasonable care and competence and breached its professional duties.

STG_758132.1

16

124. By not properly naming Staker as an additional insured on the AL Policy, Hancock-Leavitt failed to exercise reasonable care and competence and breached its professional duties.

125. By not properly procuring all insurance required in the Haul Agreement for both BDR and Staker, Hancock-Leavitt failed to exercise reasonable care and competence and breached its professional duties.

126. Staker justifiably relied Hancock-Leavitt's representations, including the certificates and endorsements that Hancock-Leavitt issued.

127. As a direct and proximate cause of Hancock-Leavitt's conduct, Staker has been damaged in an amount to be proved at trial.

128. Under the circumstances, it was foreseeable that Hancock-Leavitt's actions created a risk of harm specific to Staker.

129. Under the circumstances, it was foreseeable that Staker's specific protection depended on Hancock-Leavitt's conduct.

130. Staker has been required to retain the services of attorneys to prosecute this claim and recover policy benefits, and Staker is entitled to recover reasonable attorney fees and other costs incurred in this litigation as special damages, in addition to any other relief to which it may be entitled.

### PRAYER FOR RELIEF

Wherefore, Staker prays for relief against Defendants as follows:

a. for general damages in an amount to be proved at trial, including but not limited to all losses, expenses, fees, costs, and damages incurred in connection with the Lawsuit;

    b.    for special damages in an amount to be proved at trial, including but not limited to all losses, expenses, fees, costs, and damages incurred in connection with the Lawsuit;

    c.    for a judicial declaration as to the rights, obligations, and liabilities of the parties with respect to all relevant policies of insurance;

    d.    for indemnity;

    e.    for punitive damages in an amount sufficient to make an example of the Carriers' egregious misconduct and to deter the Carriers' from acting inappropriately in the future;

    f.    for an award of reasonable attorney fees and costs incurred herein for the necessity of filing suit to recover policy benefits;

    g.    for pre- and post-judgment; and

    h.    for such other and further relief as the Court deems just, equitable, or proper.

DATED: January 18, 2018.    DURHAM JONES & PINEGAR, P.C.

/s/ Eli Milne
SHANE W. CLAYTON
ELIJAH L. MILNE
*Attorneys for Plaintiff*