Rebecca L. Hill, USB # 06246
Rebecca.Hill@chrisjen.com
George W. Burbidge, USB # 06503
George.Burbidge@chrisjen.com
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 323-5000

*Attorneys for Plaintiff Staker & Parson Companies, Inc.*
*d/b/a Western Rock Products*

---

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION, SOUTHERN REGION

| | |
|---|---|
| STAKER & PARSON COMPANIES, INC., d/b/a WESTERN  ROCK PRODUCTS, a Utah corporation, | **PLAINTIFF STAKER & PARSON COMPANIES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Plaintiff, | Case No. 4:18-cv-00014-DN |
| vs. | Judge David Nuffer |
| SCOTTSDALE INSURANCE COMPANY, an Ohio Corporation; COLORADO CASUALTY INSURANCE COMPANY, a New Hampshire Corporation, et al., | Magistrate Judge Paul Kohler |
| Defendants. | |

### STAKER & PARSON COMPANIES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF

## TABLE OF CONTENTS

I.      RELIEF SOUGHT ................................................................................... 1

II.     INTRODUCTION AND BACKGROUND ........................................... 1

III.    STATEMENT OF UNDISPUTED MATERIAL FACTS .................... 4

    A.    The Mine Operation And Accident ........................................... 4

    B.    The *Baughn* Suit and Initial Complaint ................................. 6

    C.    The First Amended Complaint Filed In The *Baughn* Suit ..... 11

    D.    The Scottsdale Policy ................................................................ 13

        1.    The Policy And Covered Autos ...................................... 13

        2.    Relevant Provisions of the Auto Coverage Form ......... 14

        3.    The Policy Contains A Designated Insured Endorsement Which Names Staker's d/b/a Western Rock Products as a Designated Insured. .................. 17

    E.    Scottsdale's Denial of Staker's Tender of the *Baughn* Suit. ................................. 18

    F.    Staker's Payment of its and Mr. Gamez's attorneys fees and costs in the *Baughn* Suit and in this Suit. ..................................................................... 21

IV.    ARGUMENT ....................................................................................... 21

    A.    Standard For Summary Judgment. .......................................... 21

    B.    Arizona law applies to this Suit. .............................................. 22

    C.    Arizona's law regarding construction of an insurance contract and an insurer's duty to defend an insured. ........................................................ 23

    D.    Scottsdale owed a duty to defend Staker for the claims alleged against it in the Initial Complaint Filed in the *Baughn* Suit. .......................................... 25

        1.    Staker qualifies as an insured under Section 1.b. of the Who Is An Insured provision of the Policy by using, with BDR's permission, BDR's covered autos operated by Baughn to transport Staker's materials within the Mine. ....................................................................... 25

i

**2.     The allegations made against Staker in the Initial Complaint regarding failure to adequately maintain the Mine's road for the safe use and operation of BDR's covered auto fall outside the scope of Section 1.b.(4)'s insured exception to coverage "while moving property to or from a covered auto".................................................................................................. 28**

**3.     The allegations made against Staker in the Initial Complaint regarding failure to adequately maintain the Mine's road fall outside the scope of Policy's Mechanical Device Exclusion. ............................................................. 34**

**E.     Scottsdale also owes coverage to Staker for the additional facts alleged in the Amended Complaint against Staker for negligent training of workers regarding safety procedures when a rock is lodged between vehicle tires. ......... 35**

**F.     Since Scottsdale breached the Policy, the Court should grant Staker recovery of the fees and costs incurred in the *Baughn* Suit, and recovery of fees and costs being incurred in this Suit pursuant A.R.S. § 12-341.01............................ 37**

**V. CONCLUSION.................................................................................................................... 39**

## <u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999) ..................................... 22

*BancInsure v. FDIC*, 796 F.3d 1226 (10th Cir. 2015) ................................................................ 22

*Baughn v. Staker & Parson Companies, Inc.*, No. 2 CA-CV 2017-0209, 2018 WL 5249968 (Ariz. Ct. App. Oct. 22, 2018). ...................................................................................................... 3

*California Cas. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 185 Ariz. 165, 168, 913 P.2d (Ct. App. 1996) .................................................................................................................................... 26

*Chavez v. Arizona Sch. Risk Retention Tr., Inc.*, 227 Ariz. 327, 330, 258 P.3d (Ct. App. 2011) ............................................................................................................................................ 28

Desert Mountain Props. Ltd. v. Liberty Mut. Fire Ins., 225 Ariz. 194, 200 ¶ 14, 236 P.3d 421, 427 (Ariz. Ct. App. 2010) ..................................................................................................... 25

*Farmers Ins. Co. of Arizona v. Till*, 170 Ariz. 429, 431, 825 P.2d 954, 956 (Ct. App. 1991) ..... 28

Fed. R. Civ. P. 56(a) ........................................................................................................................ 22

*Lennar Corp. v. Auto-Owners Ins. Co.*, 214 Ariz. 255, ¶ 15, 151 P.3d 538, 544 (Ct. App. 2007) ............................................................................................................................................ 26

*Littlefield v. Mobil Expl. & Producing, N. Am., Inc.*, 988 F. Supp. 1403 (D. Utah 1996) .......... 24

*Mission Ins. Co. v. Aid Ins. Servs.*, 120 Ariz. 220, 220, 585 P.2d 240, 240 (1978) .................... 28

*Morris v. Health Net of California, Inc., 1999 UT 95, ¶ 8, 988 P.2d 940* .................................... 23

*Nat'l Cas. Co. v. S. Shore Iron Works, Inc.*, 341 F. Supp. 3d 884 (N.D. Ill. 2018) ..................... 34

*Navigators Specialty Ins. Co. v. Nationwide Mut. Ins. Co.*, 50 F. Supp. 3d 1186, 1199 (D. Ariz. 2014) ...................................................................................................................................... 40

*Progressive Classic Ins. Co. v. Blaud*, 132 P.3d 298 (Ct. App. 2006) ......................................... 40

*Quihuis v. State Farm Mut. Auto. Ins. Co.*, 235 Ariz. 536 ¶ 27, 334 P.3d 719 (2014) ................ 25

*Regal Homes, Inc. v. CNA Ins.*, 217 Ariz. 159, ¶ 19 171 P.3d 610 (Ct. App. 2007) .................... 26

*Rupp v. Transcon. Ins. Co.,* 627 F. Supp. 2d 1304 (D. Utah 2008) .............................................. 23

*Ryder Truck Rental, Inc. v. Nat'l Fire Ins. Co. of Hartford*, 246 F. Supp. 3d 1231, 1236 (E.D. Wis. 2017) ...................................................................................................................... 37

*Scottsdale Ins. Co. v. Van Nguyen*, 158 Ariz. 476, 763 P.2d 540 (Ct. App. 1988) ..................... 26

*Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127, 1132 (1982) .................... 25

*Teufel v. Am. Family Mut. Ins. Co.,* 244 Ariz. 383, ¶ 10, 419 P.3d 546, 548 (2018) ............ 25, 26

*United Fin. Cas. Co. v. Associated Indem. Corp.*, No. 1 CA-CV 15-0564, 2016 WL 6518491, at *2 (Ariz. Ct. App. Nov. 3, 2016) ............................................................................. 27

*Ventana Med. Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*, 2010 WL 1752509, at *24 (D. Ariz. 2010) ................................................................................................................................ 40

*Westfield Ins. Co. v. Aetna Life & Cas. Co.*, 153 Ariz. 564, 568, 739 P.2d 218, 222 (Ct. App. 1987) ....................................................................................................................................... 28

*Wilshire Ins. Co. v. Home Ins. Co.*, 179 Ariz. 602, 880 P.2d 1148 (Ct. App. 1994)........ 31, 32, 33

**Statutes**

A.R.S. § 12-341.01 ........................................................................................................... passim

**Other Authorities**

Restatement (Second) of Conflict of Laws § 188 (1971) ........................................................... 23

**Rules**

F.R.C.P. Rule 56 .............................................................................................................. 1, 21

## I.   RELIEF SOUGHT

Pursuant to F.R.C.P. Rule 56, Plaintiff Staker & Parson Companies, Inc., d/b/a Western Rock Products ("Staker") moves this Court for an order granting partial summary judgment against Defendant Scottsdale Insurance Company ("Scottsdale) on Staker's First and Fourth Causes of Action for Breach of Contract and Declaratory Judgment, that no genuine issues of material fact exist and as a matter of law: 1) Scottsdale owed a duty to defend Staker under a commercial automobile policy issued to named insured BDR Transport for the claims alleged against Staker in the suit, *William Baughn v Staker & Parson Companies, Inc. et al.*, filed in the Superior Court of Pima County, State of Arizona ("*Baughn* Suit"); 2) Scottsdale breached the Policy in denying Staker's tender of the *Baughn* Suit and not defending it; and 3) As a result of Scottsdale's breach of the Policy, Staker is entitled to recover from Scottsdale: (a) attorneys' fees and litigation costs it incurred in the *Baughn* Suit; and (b) attorneys' fees and litigation costs incurred in this Suit pursuant to Arizona Revised Statutes § 12-341.01.

## II.   INTRODUCTION AND BACKGROUND

Staker sues Scottsdale for failing to defend it as an insured under the commercial automobile liability policy issued to named insured Blake Reidhead, Inc. d/b/a/ BDR Transport ("BDR") concerning an accident injuring William Baughn ("Baughn"). Staker operated the Ina Pit Mine ("Mine"), located in Pima, Arizona, where rock was mined, hauled and crushed on the Mine's grounds. Staker retained BDR to provide transport services, including transporting materials between the processing areas of the Mine. Under a Haul of Materials Agreement ("Haul Agreement"), which Staker and BDR entered into in late 2013, BDR agreed to procure certain insurance coverages and name Staker as an additional insured.

1

On January 29, 2014, Baughn, a BDR driver, was hauling rock in a BDR tractor and trailer, driving between the Mine's pit yard and crushing area.  During a haul, Baughn's vehicle picked up a rock from the road and it lodged between one of the trailer's dual sets of tires.  While in the yard, Baughn got out of the tractor cab and noticed the lodged rock between the dual tires.  He grabbed a hammer and started hitting the rock to dislodge it.  While hammering, the tires exploded, causing multiple injuries to Baughn ("Accident").

On January 29, 2015, Baughn filed the *Baughn* Suit against Staker, BDR and agents of those entities.  The initial Complaint asserts a negligence claim against Staker for the Accident and failing to report it to MSHA.  The Complaint asserts a spoliation of evidence claim against BDR for failing to report and for destruction of evidence.  Baughn filed a First Amended Complaint asserting additional facts and claims of negligence against Staker.

During the relevant time of the Accident, Scottdale issued to BDR a commercial automobile policy ("Policy") which included liability coverage for scheduled vehicles.  The subject tractor and trailer were listed scheduled vehicles.  The Policy contains a "Who Is An Insured" section setting forth categories of persons and entities who qualify as insureds and excepting coverage for some persons and entities.  The Policy also contains a Designated Insured Endorsement, naming Western Rock Products within the schedule.  Western Rock Products is a registered d/b/a of Staker.  Additionally, during this same time, Colorado Casualty Insurance Company ("CCIC") provided a commercial general liability insurance policy to BDR.

In February 2015, Staker tendered the *Baughn* Suit to BDR, Scottsdale and CCIC requesting that one or both insurers defend Staker.  In the end of March 2015, Scottsdale, through

coverage counsel it retained, denied Staker's tender.  CCIC also denied Staker's tender.[1]  BDR also tendered the *Baughn* Suit to Scottsdale and CCIC and its tender was denied as well.  As a result of the denials, Staker defended itself in the *Baughn* Suit and was forced to file a crossclaim against BDR for breach of Haul Agreement's indemnity and insurance provisions.

In July 2016, Staker learned for the first time that the Scottsdale Policy contained the Designated Insured Endorsement listing its d/b/a Western Rock Products in the schedule.  Upon learning of that fact, Staker retendered the *Baughn* Suit to Scottsdale.  Scottsdale's coverage counsel responded to Staker's retender, again denying coverage to it, but asked that Staker provide evidence that Western Rock Products is a d/b/a of Staker.  Staker responded providing a copy of Staker's d/b/a application for Western Rock Products filed with the Utah Department of Commerce and contested the denial of the retender.  Neither Scottsdale nor its coverage counsel responded to Staker's follow-up letter or its additional letters demanding coverage.

The *Baughn* Suit was tried in May of 2016 and the jury found in favor of Baughn in the amount of $2,550,000 apportioning fault to Baughn of 25%, Staker 60% and BDR 15%.  Staker appealed the jury verdict, and in October, 2018, the Arizona Court of Appeals vacated the judgment ruling that the evidence was insufficient as a matter of law for the jury to find that Staker violated a duty owed to Baughn.[2]

In January 2018, Staker filed this Suit alleging, among other claims, breach of contract and declaratory judgment against Scottsdale for owing defense and indemnification for the *Baughn*

---

[1] Staker sued CCIC in this Suit.  Staker settled with and dismissed its claims against CCIC with prejudice in the Summer of 2020.
[2] *See Baughn v. Staker & Parson Companies, Inc.*, No. 2 CA-CV 2017-0209, 2018 WL 5249968 (Ariz. Ct. App. Oct. 22, 2018).

Suit. With the Arizona Court of Appeals ruling vacating the judgment against Staker in October 2018, Staker's claim for indemnification became moot and Staker's claims for declaratory relief and breach of contract only concern Scottsdale's duty to defend Staker.

Staker respectfully requests the Court to grant partial summary judgment finding as a matter of law that Scottsdale owed a duty to defend Staker for the *Baughn* Suit and breached its contractual obligations under the Policy in denying coverage.  In denying coverage, Scottsdale failed to fully analyze and recognize that the allegations asserted against Staker in the Initial and Amended Complaints fall within the Policy's "Who Is An Insured" provisions so that Staker qualified as an insured under the Policy.  The allegations also fall outside the scope of the Policy's exclusions so coverage was triggered.  As a result of Scottsdale's breach of the Policy, Staker is entitled to recover attorneys' fees and costs it incurred in the *Baughn* Suit and attorneys' fees and costs incurred in this Suit pursuant to Arizona Revised Statutes § 12-341.01.

### III.  STATEMENT OF UNDISPUTED MATERIAL FACTS

**A.      The Mine Operation And Accident**

1.      During the relevant time of the Accident, which occurred on January 29, 2014, Staker operated the Ina Pit Mine, located in Pima, Arizona, where rock was mined, transported and crushed within the Mine's processing areas.[3]

2.      From approximately 2010 forward, Staker retained Blake Reidhead, Inc. dba BDR Transport ("BDR") to provide transport services with respect to the Mine, including using BDR's

---

[3] *See* Initial Complaint filed in the *Baughn* Suit at ¶¶ 2, 11-12 (SCOTTSDALE001923-SCOTTSDALE001946) ("Initial Complaint"), attached as Ex. A.

semi-tractors and trailers to haul materials along the Mine's road between the various processing areas (e.g., from pit to the crushing area).[4]

3.      In late 2013, Staker and BDR entered into and executed a written agreement entitled Haul of Materials Agreement.[5]

4.      The Haul Agreement contains several provisions regarding insurance and under those provisions, it provides:

> 8. . . . . Contractor [BDR] shall at its own costs and expense procure and keep in force and effect throughout the term of this Agreement the insurance listed below:
>
> *      *      *      *
>
> c) Automobile Liability Insurance on all motor vehicles owned, hired or non-owned, which may be used or connected with any of the work hereunder, with limits of not less than $1,000,000 for all liability arising out of injury to or death of one or more persons, in any one occurrence . . .; and
>
> b) The insurance "shall specifically name Owner [Staker] as an additional insured party and shall be primary to any and all insurance of Owner with respect to any and all claims and demands which may be made against Owner for bodily injury or death resulting therefrom, including injury or death to Contractor [BDR], its employees, workmen, agents and servants . . . . Such insurance shall specifically provide that it applies separately to each insured against which claim is made or suit is brought, except with respect to the limits of the insurer's liability . . . ."[6]

5.      On January 29, 2014, Baughn, a driver employed by BDR, was working at the Mine transporting dirt and rock between the Mine's areas and was involved in an Accident.[7]

---

[4] *See id.*, at ¶¶ 11-12, Ex. A; *see also* Deposition Blake Reidhead at pages 25-35 (StakerIns0011059-StakerIns0011060), copies of cited pages attached as Ex. B and Deposition Mike Gamez at pages 30-40 (StakerIns0010181-StakerIns0010183), copies of cited pages attached as Ex. C.

[5] *See* Haul of Materials Agreement (SCOTTSDALE001286-SCOTTSDALE001291), attached as Ex. D.

[6] *Id.*, at ¶ 8(c), Ex. D

[7] *See* Initial Complaint at ¶¶ 11-12, Ex. A.

6.      The Accident involved a rock getting lodged between a set of the trailer's dual tires. Baughn discovered the rock, used a hammer to try to dislodge it and the dual tires exploded, injuring Baughn.[8]

7.      At the time of the Accident, Baughn was driving one of BDR's semi-tractors and attached to the tractor was BDR's 2007 Ranco End Dump Trailer, VIN 1R9ESD50X7L008773.[9]

8.      Baughn suffered multiple injuries from the Accident.[10]

**B.      The *Baughn* Suit and Initial Complaint**

9.      On January 29, 2015, Baughn filed suit, entitled *William Baughn v Staker & Parson Companies, Inc. et al.*, Case No. C20150432, in the Superior Court of the State of Arizona, Pima County, naming Staker, Staker's Plant Manager, Michael Gamez ("Gamez"), BDR and BDR's owner, Blake Reidhead ("Reidhead"), as defendants.[11]

10.      The *Baughn* Suit seeks liability and damages for the Accident and liability and damages for the conduct of destroying evidence and failing to report the Accident.[12]

11.      In the first section of the Initial Complaint, the defendants are identified, including Staker and BDR:

> 2.      Defendant Staker & Parson Companies, Inc. ("Staker") is a Utah Corporation which operates a mine in Pima County sometimes known as the "Ina Pit".
>
> *            *            *            *
>
> 4.   Blake Reidhead, Inc., trade name and doing business as BDR Transport ("BDR") is an Arizona Corporation which employed Baughn on January 29, 2014.  For the time period up to and including the January 29, 2014 accident,

---

[8] *See id.*, at ¶¶ 25-29 and the Complaint's Exhibits.
[9] *See* documents produced by BDR in the *Baughn* Suit identifying the Ranco Trailer (StakerIns0019266-StakerIns0019268), attached as Ex. E.
[10] *See* Initial Complaint at ¶ 37, Ex. A.
[11] *See id.*, at ¶¶ 2-5.
[12] *See id.*, at ¶¶ 11-69.

> BDR is protected from liability as a result of Arizona Workers' Compensation Act, A.R.S. § 23-1022.
>
> &ast;          &ast;          &ast;          &ast;
>
> 10. On information and belief, all actions and inactions of employees or agents of Staker and BDR were consistent with instructions given, or understood to be consistent with how the company wanted to execute its responsibilities.[13]

12.     After identifying the defendants, the next section of the Initial Complaint, entitled January 29, 2014 ("Accident Section"), sets forth the facts which existed on the date of the Accident and describes conduct which allegedly causes the Accident.[14]

13.     The Accident Section first alleges facts regarding the relationship between Baughn, BDR and Staker and duties of Staker as a mine operator:

> 11.  On January 29, 2014, Baughn was employed by BDR as a truck driver, working at the Ina Pit.  Baughn drove what is often referred to as a rear end loading trailer.
>
> 12.  On January 29, 2014, prior to and until at least the accident, Staker was the mine operator and loaded dirt and rock onto the truck trailer driven by Baughn and other drivers, including BDR co-employees of Baughn.
>
> 13.  There are limits to what can lawfully be placed onto a truck trailer.
>
> 14.  Those limits are set in part to protect the drivers, employees, and public from potential hazards.
>
> &ast;          &ast;          &ast;          &ast;
>
> 18.  Mine operator Staker had a duty to maintain reasonably safe mine road and dump site conditions which would include routine clearance of matter to prevent and minimize the likelihood of rocks interfering with the safe operation of truck tires.[15]

---

[13] *Id.*, at ¶¶ 2-10.
[14] *See id.*, at ¶¶ 11-40.
[15] *Id.*, at ¶¶ 11-14 and 18.

14.     The Accident Section next describes the conditions encountered by Baughn as to Staker's loading of his trailer and his transportation of those loads along the Mine's road, alleging ways in which Staker was potentially liable in causing the Accident:

15.   Among the hazards that occur from overloading a truck trailer is added stress to the tires upon which the weight is borne.

16.  Defendant Staker had a practice of routinely overloading trailers.

17.   Staker and other Defendants also engaged routinely in the practice of unevenly loading the trailer of trucks.   The manner that the uneven loading occurred also increased the stress on the rear tires of the trailer.

18.  Mine operator Staker had a duty to maintain reasonably safe mine road and dump site conditions which would include routine clearance of matter to prevent and minimize the likelihood of rocks interfering with the safe operation of truck tires.

19.  On January 29, 2014, the routine practices of overloading and unevenly loading "baskets" in the truck trailer were being practiced by Staker.

20.  On information and belief, the operator of the loader of dirt and materials onto the trailer was a Staker employee, or otherwise contracted so as to have his work directions controlled by Staker.

21.  On information and belief, the operator of the dirt loader ran equipment which allowed the reasonably precise calculation of poundage that had been loaded onto the truck trailer and each of the baskets on the trailer.

22.  Staker through its employees, was aware that its regular practice would result in overloading trailers, which would add stress to the trailer tires.

23.  Staker, through its employees, was aware that its regular practice of uneven loading would add stress to the rear tires.

24. On January 29, 2014, there were inadequately maintained conditions at the Ina Pit road which allowed trailer tires to pick up rocks which had not been cleared by sufficient road maintenance.   One or more rocks lodged between dual tires of truck trailers, including the truck driven by Baughn.[16]

---

[16] *Id*., at ¶¶ 15-24.

15.    The Accident Section of the Initial Complaint then describes how the Accident occurred:

> 25.  On January 29, 2014, Baughn's vehicle picked up a rock between its dual tires prior to the accident.
>
> 26.  Truck trailers could pick up a rock which would lodge between dual tires without any fault on the part of the driver.
>
> 27.  Truck trailers could pick up a rock which would lodge between dual tires on the road, at dump sites, and loading sites without any fault of the driver.
>
> 28.  Baughn was not at fault for his truck trailer picking up rock(s) between dual tires.
>
> 29.  The accident in which Baughn was injured was described by BDR in a December 4, 2014 submission to the United States Mine Safety and Health Agency ("MSHA"): "William Baughn was hauling dirt for Staker Parson's yard at 5400 W. Massingale Rd., Tucson, AZ  85743.  While in the yard he noticed there was a large rock between two tires on his trailer.  (Rear Right Dual Tires).  He grabbed his hammer and started hitting the rock to get it out of there.  Hit it a couple of times and then both tires blew while he was hitting the rock.  After the tires blew, the loader operator looked and noticed him on the ground.  He then called his manager to call 911.[17]

16.    The Accident Section alleges two types of wrongful conduct on the part of Staker in causing the Accident: 1) Staker overloading and/or unevenly loading BDR trailers placing stress on their tires [¶¶ 13-17, 19-23]; and 2) Staker inadequately maintaining conditions along the Mine's road, thereby creating the driving conditions which allowed rocks to be picked up and lodged in the dual tires of BDR's trailers while transporting Staker's materials [¶¶ 18, 24-28].[18]

17.    The next section of the Initial Complaint, entitled Defendants Staker And BDR Fail To Report, And Destroy Evidence Of The Accident, alleges facts that neither BDR nor Staker

---

[17] *Id.*, at ¶¶ 25-29.
[18] *See id.*, at ¶¶ 13-28.

reported the Accident to the Mine Safety and Health Administration ("MSHA") or other governmental authorities.[19]

18.    After alleging the facts, Baughn's Initial Complaint asserts a negligence cause of action against Staker and Mr. Gamez and a third-party spoliation of evidence cause of action against BDR.[20]

19.    The negligence cause of action provides, in relevant part:

**COUNT 1**
**NEGLIGENCE OF STAKER PARSONS**

70.  Plaintiff incorporates all paragraphs above as if against stated in Count 1.

71.  Staker had a duty to provide reasonably safe conditions at the Ina Pit.

72.  Staker violated its duties by failing to maintain reasonably safe working conditions, and by creating hazards such as overloading and uneven loading of trailers.

73.  The overloading of trailers may be a substantial factor in causing the stress on a tire which would cause the extraordinary result of a tire explosion.

74.  Tire explosions due to overloading and being overstressed are conditions that are foreseeable and preventable.

75.   On information and belief, the tire or tires that exploded proximately causing the injury to Baughn were overstressed.

76.   On information and belief, the tire or tires that exploded proximately causing the injury to Baughn were overstressed by overloading and uneven loading

*       *       *       *

84.  The negligence of Staker proximately caused the accident and injuries to Baughn.[21]

---

[19] *See id.*, at ¶¶ 41-69.
[20] *See id.*, at ¶¶ 70-95.
[21] *Id.*, at ¶¶ 70-85.

**C.      The First Amended Complaint Filed In The *Baughn* Suit**

20.     On March 18, 2015, Baughn filed a First Amended Complaint in the *Baughn* Suit.[22]

21.     The First Amended Complaint asserts additional allegations within the Accident Section that Staker and BDR failed to train and/or communicate to workers, including Baughn, regarding the safe procedures to use if a vehicle picks up a rock which gets lodged between dual tires.  Those new allegations provide:

> 11.  Staker as a mine operator, and BDR as employer engaging in activity within a mine and within the jurisdiction of the Mine Safety and Health Administration of the United States Department of Labor (MSHA), owed duties to persons working in the mine including Baughn, to train all employees regarding safety and safe techniques to perform their work.
>
> \*       \*       \*       \*
>
> 13.  Staker and BDR failed to have adequate standards and to adequately train workers including Baughn regarding working on equipment with the potential of hazardous release of energy.  One such hazard is the potential uncontrolled release of pressure from a tire.
>
> 14.  Staker and BDR did not have and communicate adequate safe procedures to use if a truck in the mine picked up rocks, including a rock which may become lodged between dual tires.
>
> 15.  Staker and BDR oversaw a system at the Ina Pit where employees who had not been adequately trained became responsible for dealing with hazards such as rocks lodged between dual tires.
>
> 16.  Staker and BDR were aware, or if acting reasonably in their responsibilities would have been aware, that hauling within an open pit includes potentially hazardous activity including risks from equipment including tires.
>
> \*       \*       \*       \*
>
> 35.  Staker and BDR had never instructed Baughn to stop working if and when a rock became lodged between dual tires.
>
> 36.  Staker and BDR had never instructed Baughn to seek assistance from a designated individual if and when a rock became lodged between dual tires.

---

[22] *See* First Amended Complaint filed in the *Baughn* Suit (StakerIns0000053-StakerIns0000066), attached as Ex. F.

37.  Staker and BDR had never instructed or authorized Baughn to stop working if and when a rock became lodged between dual tires to call a tire service or supervisor of any sort who was adequately trained to safely resolve the potential hazard.[23]

22.     The First Amended Complaint continues to assert the same allegations made in the Initial Complaint regarding overloading/uneven loading of trailers and inadequate maintenance of the Mine's road where BDR's vehicles transported Staker's materials.[24]

23.     The First Amended Complaint's Count 1 negligence cause of action asserted against Staker and Mr. Gamez continues to have the same allegations made in the Initial Complaint[25], but also adds Paragraph Nos. 80 and 81 addressing negligent training:

## COUNT 1
## NEGLIGENCE OF STAKER PARSONS

78.  Plaintiff incorporates all paragraphs above as if against stated in Count 1.

79.  Staker had a duty to provide reasonably safe conditions at the Ina Pit.

80.  Staker and BDR failed to comply with requirements of statute, regulation, and/or common law.  The failure of compliance and to use reasonable care in devising and implementing adequate safety training and techniques is a proximate cause of the injuries to Baughn which are described in this Complaint.

81.  The accident and injuries described in this complaint would not have occurred but for the negligence of Staker.[26]

---

[23] First Amended Complaint at ¶¶ 11-16, 35-37, Ex. F.

[24] *Compare* Complaint Initial Complaint at ¶¶ 11-29, Ex. A. with First Amended Complaint at ¶¶ 12, 17-34, Ex. F.

[25] *Compare* Initial Complaint at ¶¶ 70-87, Ex. A. with First Amended Complaint at ¶¶ 78-79, 83-97, Ex. F.

[26] First Amended Complaint at ¶¶ 78-81, Ex. F.

### D.     The Scottsdale Policy[27]

#### 1.     The Policy And Covered Autos

24.     Scottsdale issued a Commercial Lines Policy to named insured BDR, Policy No. OPS006248, with a policy period of October 23, 2013 through October 23, 2014 ("Scottsdale Policy" or "Policy").[28]

25.     The Scottsdale Policy contains inland marine and commercial auto coverages, and the premium for the commercial auto coverage ("Auto") is listed as $135,735.00.[29]

26.     The Auto Declaration lists Auto Liability as a coverage and identifies the covered autos as symbol 67.[30]  The symbol 67 is identified and defined as:  "67  Specifically Described 'Auto'" which are "[o]nly those "Autos" described in Item Three of the Declarations . . . ." ("Covered Auto").[31]

27.     Item 3 of the Policy's Declarations is entitled Schedule of Covered Autos You Own and refers the reader to "See Schedule of Covered Autos You Own" ("Schedule Auto Form") and such form lists the specific covered autos BDR owns.[32]

28.     On the day of the Accident, Baughn was driving a BDR tractor and attached to the tractor was BDR's 2007 Ranco Trailer, VIN 1R9ESD50X7L008773 ("Ranco Trailer").  It is one

---

[27] A certified copy of the Scottsdale Policy (SCOTTSDALE000001-SCOTTSDALE000187) is attached as Ex. G.

[28] *See id*., at Common Policy Declaration (SCOTTSDALE000005).

[29] *See id*.

[30] *See id*., at Supplemental Declarations (SCOTTSDALE000032).

[31] *See id*., at Motor Carrier Coverage Form p.1 of 14 (SCOTTSDALE000062).

[32] *See* Scottsdale Policy at Motor Carrier Coverage Form Supplemental Declarations at p. 2 of 5 (SCOTTSDALE00003) and Schedule of Covered Autos You Own Form (SCOTTSDALE000037-SCOTTSDALE000054).

of the Ranco Trailer's rear sets of dual tires which were involved in the Accident injuring Baughn.[33]

29.     The Ranco Trailer is listed and specifically identified as BDR's covered auto no. 37 on the Policy's Schedule Auto Form.[34]

30.     Two different BDR tractors were identified as the tractor which Baughn was driving at the time of the Accident.  Both identified tractors are listed as covered autos no. 47 and no. 84 on the Scottsdale Policy's Schedule Auto Form.[35]

### 2.     Relevant Provisions of the Auto Coverage Form

31.     The insuring provision of the automobile liability portion of the Scottsdale's Policy ("Auto Coverage Form")[36] provides, in relevant part:

### SECTION II – LIABILITY COVERAGE

### A.  Coverage

---

[33] *See* documents produced by BDR in the *Baughn* Suit identifying the Ranco Trailer (StakerIns0019266-StakerIns0019268), Ex. E.

[34] *See* Policy, Schedule of Covered Autos You Own Form, at SCOTTSDALE000043, Ex. G.

[35] When the *Baughn* Suit was first reported to Scottsdale, Scottsdale's claims representative received and documented information that the tractor Baughn was driving on the day of the Accident was a 2001 Peterbilt VIN 1XP5DU9X8IN542144.   *See* Scottsdale Claims Note entry, dated 02/17/2015, entered by Ken Harris, SCOTTSDALE003791-SCOTTSDALE003792, attached as Exhibit H.  The 2001 Peterbilt is specifically listed as covered auto no. 47 on the Policy's Schedule Auto Form.  *See* Scottsdale Policy at SCOTTSDALE000045, Ex. G.  However, during Scottsdale's investigation of the Suit tender, Scottsdale's insurance coverage counsel learned from Monti Hancock, insurance broker for BDR, that Baughn was driving a 2004 Kenworth Tractor VIN 3WKDDU9X54F066467.   *See* Scottsdale Claims Note entry, dated 02/17/2015, entered by Ken Harris, SCOTTSDALE003791-SCOTTSDALE003792, attached as Exhibit H.  The Kenworth Tractor is specifically identified as BDR's covered auto no. 84 on the Policy's Change Endorsement No. 002, effective 12-03-2013, and Schedule of Auto Changes.  *See* Scottsdale Policy at SCOTTSDALE000122-SCOTTSDALE000124, Ex. G.

[36] Motor Carrier Coverage Form, CA 00 20 03 10 ("Auto Coverage Form") (SCOTTSDALE000062-SCOTTSDALE000075), Ex. G.

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

&ast;  &ast;  &ast;  &ast;

We will have the right and duty to defend any "insured" against a "suit" asking for such damages . . . . However, we have no duty to defend any "insured" against a "suiting seeking damages for "bodily injury" or "property damage" . . . to which this insurance does not apply.  We may investigate and settle any claim or "suit" as we consider appropriate.  Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.[37]

32. The Policy's Auto Coverage Form next describes those persons and entities who qualify as insureds under the Policy:

**1.  Who Is An Insured**

The following are "insureds":

**a.**  You for any covered "auto".

**b.**  Anyone else while using with your permission a covered "auto" you own, hire, or borrow except:

 **(1)**  The owner, or any "employee", agent or driver of the owner, or anyone else from whom you hire or borrow a covered "auto".

 **(2)**  Your "employee" or agent if the covered "auto" is owned by that "employee" or agent or member of his or her household.

 **(3)**  Someone using a covered "auto" while he or she is working in a business of selling, servicing, parking or storing "autos" unless that business is yours.

 **(4)**  Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), a lessee or a borrower of a covered "auto" or any of their "employees", while moving property to or from a covered "auto".

---

[37] *Id*., at pp. 2-3 of 14 (SCOTTSDALE000062-SCOTTSDALE000064).

**(5)**  A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

\*        \*        \*        \*

**e.**  Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.[38]

33.    The Auto Coverage Form contains a number of exclusions limiting coverage and one of the exclusions is entitled Movement Of Property By Mechanical Device:

**B.  Exclusions**

This insurance does not apply to any of the following:

\*        \*        \*        \*

**8.  Movement Of Property By Mechanical Device**

"Bodily Injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".[39]

34.    The Auto Coverage Form defines the words "you", "insured" and "suit" in the following manner:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. . . .

\*        \*        \*        \*

**G.**   "Insured" means any person or organization qualifying as an insured in the Who Is An Insured Provision of the applicable coverage.  Except with respect to Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**P.**   "Suit" means a civil proceeding in which

**1.**   Damages because of "bodily injury" or "property damages", or

**2.**   A "covered pollution costs or expense",

to which this insurance applies, are alleged.[40]

---

[38] *Id.*, at p. 3 of 14 (SCOTTSDALE000064).
[39] *Id.*, at p. 5 of 14 (SCOTTSDALE000066).
[40] *Id.*, at pp. 1, 13 and 14 of 14 (SCOTTSDALE000062, 000074 and 000075).

### 3. The Policy Contains A Designated Insured Endorsement Which Names Staker's d/b/a Western Rock Products as a Designated Insured.

35.     The Scottsdale Policy also contains a number of Designated Insurance Endorsements and one of those endorsements identifies the entity Western Rock Products.[41]

36.     The Designated Insured Endorsement provides, in relevant part:

**DESIGNATED INSURED**

\*         \*         \*         \*

With respect to coverage provided by this endorsement, the provision of the Coverage Form applies unless modified by this endorsement.

This endorsement identifies person(s) or organization(s) who are "insureds" under the "Who is an Insured Provision of the Coverage Form.  This endorsement does not alter coverage provided in the Coverage Form.

\*         \*         \*         \*

SCHEDULE

**Named of Person(s) or Organization(s)**

\*         \*         \*         \*

WESTERN ROCK PRODUCTS
851 N. RED ROCK ROAD
ST. GEORGE, UT 84770

\*         \*         \*         \*

Each person or organization shown in the Schedule is an "insured" for Liability Coverage, but only to the extent that person or organization qualifies as an "insured" under the Who Is An Insured Provision contained in **Section II** of the Coverage Form.[42]

37.     Western Rock Products is a d/b/a of Staker.  Staker registered Western Rock Products as its d/b/a with the State of Utah Department of Commerce on April 20, 2007.[43]

---

[41] *Id*., at CA 20 48 02 99 at p. 1 of 1 (SCOTTSDALE000088).

[42] *Id*.

[43] *See* State of Utah, Department of Commerce, Division of Corporation Business Name Registration/DBA Application, dated April 20, 2007 (SCOTTSDALE000815), attached as Ex. I.

### E.   Scottsdale's Denial of Staker's Tender of the *Baughn* Suit.

38.     In the first part of February 2015, after being served with the *Baughn* Suit Initial Complaint, Staker sent a tender letter to Scottsdale, seeking coverage as an insured under the Policy Scottsdale issued to BDR.[44]  BDR also tendered the *Baughn* Suit to Scottsdale.

39.     Scottsdale retained legal counsel, Scott W. McMickle and Jonathan J. Kandell of the law firm of McMickle, Kurey & Branch, L.L.P. (collectively "MKB") to investigate and analyze Staker's and BDR's tenders of the *Baughn* Suit for Scottsdale.[45]

40.     On or about March 26, 2015, MKB sent a letter to Staker's in-house counsel, M. Craig Hall, informing him that Scottsdale "has determined that its insurance policy does not provide coverage for" Staker or its Plant Manager, Michael Gamez and is denying Staker's tender of the *Baughn* Suit ("First Disclaimer Letter").[46]

41.     The First Disclaimer Letter explains Scottsdale's decision to deny coverage to Staker and Mr. Gamez:

<u>**DISCLAIMER COVERAGE**</u>

Based upon the allegations in the Complaint, the facts known to Scottsdale, and the Policy provisions, there is no coverage for S&P [Staker] or Mr. Gamez for the claims asserted in the Complaint.  Initially, neither S&P nor Mr. Gamez qualify as "insureds" under the Policy.  Under Arizona law, the certificates of insurance signed by BDR's insurance agent do not establish insurance coverage or make S&P an additional insured. . . . Moreover, S&P and Mr. Gamez do not otherwise qualify as insureds under the policy because they are not using a covered auto and, to the extent they were, such use was in the form of loading property to a covered auto. Pursuant to paragraph A.1.b.(4) of the "Who Is Insured" Section of the Policy, S&P

---

[44] Letter from M. Craig Hall to Scottsdale Insurance Company, dated February 11, 2015 (STAKER000016-STAKER000068), a copy of which is attached as Ex. J.

[45] *See* Letter from Scott W. McMickle and Jonathan J. Kandell to M. Craig Hall, dated March 26, 2015 (STAKER000342-STAKER000350), attached as Ex. K.

[46] *See id.*

and Mr. Gamez do not qualify as insureds.  See Wilshire Ins. Co, v. Home Ins. Co., 179 Ariz. 602, 880 P.2d 1148 (Ariz. App. 1994).

In addition, even if S&P or Mr. Gamez qualified as insureds, coverage still would not exist due exclusions in the Policy, including but not limited to the "Movement of Property By Mechanical Device" exclusion.  Based on all provisions in the Policy, whether expressly stated in this letter or not, there is not coverage for S&P or Mr. Gamez under the Policy.[47]

42.     Based on Scottsdale's coverage denial, Staker was forced to defend itself in the *Baughn* Suit and was also forced to file a crossclaim against BDR alleging that BDR breached the indemnity and insurance provisions of the Haul Agreement.[48]

43.     The parties to the *Baughn* Suit moved forward with discovery and in July 2016 the parties scheduled a mediation.  Right before the mediation, Staker learned, during the deposition of BDR's insurance broker, that Western Rock Products was identified on a Designated Insured Endorsement of the Scottsdale Policy.[49]

44.     Based on the discovery of the Designated Insured Endorsement, Staker retendered the *Baughn* Suit to Scottsdale.[50]

45.     In its retender letter, Staker also asserted that Scottsdale owed coverage to it because Staker was also being sued under the Amended Complaint for "claims arising out of, *inter alia*, negligent training on the part of BDR of its employee, Mr. Baughn."  Such claims, asserted

---

[47] *Id*., at p. 8 (STAKER 000349).  MKB also sent a letter to BDR denying its tender of the *Baughn* Suit.

[48] *See* Staker & Parson's and Gamez's Answer to Plaintiff's First Amended Complaint and Crossclaim . . . (StakerIns 0000090-StakerIns 0000099), attached as Ex. L.

[49] *See* Letter from M. Craig Hall to Scott W. McMickle, dated July 11, 2016 (MKB001379-MKB001381), attached as Ex. M.

[50] *See Id*.

Staker, make it an insured under the Policy section 1e. of "Who Is An Insured" as "Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability."[51]

46.     On July 29, 2016, MKB sent a letter to Staker's in-house counsel, M. Craig Hall, denying Staker's retender of the *Baughn* Suit to Scottsdale ("Second Disclaimer Letter").[52]

47.     The Second Disclaimer Letter questions Staker's claim for coverage based on Western Rock Products' designated insured status and asks for proof that Western Rock Products is a trade name or /d/b/a of Staker.[53]

48.     The Second Disclaimer Letter also denies that Staker is owed coverage for the Amended Complaint's allegations of negligent training because "it is abundantly clear that S&P [Staker] is being sued for its own negligence and not for vicarious liability for any negligence of BDR."[54]

49.     The Second Disclaimer Letter concludes stating that "For all the reasons in the prior March 26, 2015 letter and herein, there is no coverage for S&P or Mr. Gamez for the claims asserted in the Complaint or First Amended Complaint."[55]

50.     On August 16, 2016, M. Craig Hall sent a letter to MKB providing evidence that Western Rock Products is a d/b/a of Staker and contesting Scottsdale's denial of coverage.[56]

---

[51] *Id.*, at MKB001379.
[52] *See* Letter from Scott W. McMickle and Jonathan J. Kandell to M. Craig Hall, July 29, 2016 (MKB001193-MKB001199), attached as Ex. N.
[53] *See Id.*, at MKB001195.
[54] *Id.*, at MKB00198.
[55] *Id.*
[56] *See* Letter from M. Craig Hall to Scott W. McMickle, dated August 16, 2016 (SCOTTSDALE000811-SCOTTSDALE000815), a copy of which is attached as Exhibit O.

51.     Neither MKB nor Scottsdale responded in substance to Mr. Hall's August 16, 2016 letter and Staker providing proof that Western Rock Products is a d/b/a of Staker.

**F.      Staker's Payment of its and Mr. Gamez's attorneys fees and costs in the *Baughn* Suit and in this Suit.**

52.     As a result of Scottsdale's denial of Staker's tenders, the law firm of Durham, Jones & Pinegar was hired and paid to represent Staker in the *Baughn* Suit.  The attorneys' fees and costs Staker incurred in the *Baughn* Suit, through trial and appeal, total $1,042,112.71.[57]

53.     Additionally, as a result of Scottsdale's denial of Staker's tenders of the *Baughn* Suit, Staker was forced to file this Suit against Scottsdale and has incurred and continues to incur attorneys' fees and costs.[58]

## IV.  ARGUMENT

**A.      Standard For Summary Judgment.**

Staker filed this Suit alleging a number of causes of action against Scottsdale, including breach of contract and declaratory judgment.  In this Motion, Staker moves for partial summary judgment on those two causes of action, seeking a determination that 1) Scottsdale owed a duty to defend Staker as an insured under the Policy for the claims alleged against Staker in the *Baughn* Suit; 2) Scottsdale breached its contractual obligation under the Policy in denying Staker's tender of the *Baughn* Suit; and 3) Staker is entitled to recovery of attorneys' fees and costs it incurred in the *Baughn* Suit and is incurring in this Suit pursuant to A.R.S. § 12-341.01.  Staker files its Motion pursuant to Rule 56 of the F.R.C.P.

---

[57] *See* Staker's Supplemental Initial Disclosures, dated June 25, 2020, attached as Ex. P.
[58] *See id.*

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[59]  In applying this standard, courts "view the factual record in the light most favorable to the non-moving party."[60] However, "a mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact."[61]

### B.    Arizona law applies to this Suit.

Staker, a Utah corporation, seeks in this Suit a judgment that Scottsdale, an Ohio corporation, owes a duty to defend Staker as an insured under a commercial auto policy issued to named insured, Arizona-based corporation, BDR.  Staker's claim for defense coverage concerns a suit filed against Staker by Baughn, an employee of BDR, injured in an accident occurring at the Arizona-based Ina Pit Mine, operated by Staker, and involving the use of BDR's covered autos in transporting Staker's rock along the Mine's road.

Those facts raise the issue of choice of law; and because this case comes before the Court based on diversity jurisdiction, this Court applies the substantive law of Utah in determining choice of law.[62] Utah courts follow the "most significant relationship" test, set forth in the Restatement (Second) Conflict of Laws § 188 as the rule to apply to choice of law/conflict of law questions in contract disputes.[63]  The Restatement provides:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the

---

[59] *BancInsure, Inc. v. FDIC*, 796 F.3d 1226, 1233 (10th Cir. 2015) (*quoting* Fed. R. Civ. P. 56(a).
[60] *Id.*
[61] *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999).
[62] *See Rupp v. Transcon. Ins. Co.*, 627 F. Supp. 2d 1304, 1313–14 (D. Utah 2008).
[63] *See Morris v. Health Net of California, Inc.*, 1999 UT 95, ¶ 8, 988 P.2d 940.

most significant relationship to the transaction and the parties under the principles
stated in § 6.
(2) . . . . [T]he contacts to be taken in account . . . include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicile, residence, nationality, place of incorporation and place of business
of the parties.[64]

The Policy, here, was negotiated and entered into by BDR, an Arizona corporation, and Scottsdale,

an Ohio corporation.  The location of the subject matter of the Policy is BDR's covered autos and

BDR's transportation business, all located in Arizona.  And the subject Accident involved BDR's

covered autos being used to haul Staker's materials within the Mine located in Arizona.  The only

connection between Utah and the Policy is that Staker is a Utah entity.  Because Arizona has a

more significant relationship to the contract than does Utah, the Court should apply Arizona law

to determine this case.[65]

### C. Arizona's law regarding construction of an insurance contract and an insurer's duty to defend an insured.

Staker's Motion for Partial Summary Judgment asks the Court to interpret and apply the

provisions of Policy to determine whether the allegations made against Staker in the *Baughn* Suit's

Complaints qualify Staker as an insured under the Policy and triggered Scottsdale's duty to defend

---

[64] Restatement (Second) of Conflict of Laws § 188 (1971).

[65] Staker acknowledges that the initial step in resolving a choice of law question is to determine
whether a conflict exists between the interested states' laws.  *See* Littlefield v. Mobil Expl. &
Producing, N. Am., Inc., 988 F. Supp. 1403 (D. Utah 1996).  Staker acknowledges that in many
areas of insurance law, Arizona and Utah laws do not conflict.  However, there is a conflict
between Utah and Arizona law as Arizona law allows for the recovery for attorney fees for breach
of contract pursuant to A.R.S. § 12-341.01, whereas Utah has no such statute. *See infra* Section F.

Staker in that suit.  To take on those tasks, the Court needs to know Arizona's laws generally concerning insurance contract construction and the duty to defend.

Arizona courts find that the language used in an insurance policy is critical and the words are given "their plain and ordinary meaning."[66]  The terms of the policy are construed from the perspective of "an individual untrained in law or business."[67]  Consequently, Arizona courts "are not concerned with what the 'commercial customs' are in the insurance industry, but rather, what the ordinary person's understanding of the policy would be."[68]  The interpretation of an insurance contract is a question of law to be decided by the court.[69]

Under Arizona law, a liability insurer's duty to defend, which is separate and broader than its duty to indemnify, generally arises if the complaint filed against the insured, "upon its face alleges facts which come within the coverage of the liability policy."[70]  The duty to defend arises at the earliest stages of litigation and generally exists regardless of whether the insured is ultimately found liable.[71]  The insurance policy language controls the scope and extent of an insurer's duty to defend.[72] If any of the claims fall within policy coverage, "the insurer must defend all claims,

---

[66] *Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127, 1132 (1982).

[67] *Teufel v. Am. Family Mut. Ins. Co.*, 244 Ariz. 383, ¶ 10, 419 P.3d 546, 548 (2018) *(quoting* Desert Mountain Props. Ltd. v. Liberty Mut. Fire Ins., 225 Ariz. 194, 200 ¶ 14, 236 P.3d 421, 427 (Ariz. Ct. App. 2010), *aff'd*, 226 Ariz. 419, 250 P.3d 196 (2011)).

[68] *Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127, 1132 (1982).

[69] *See id.*

[70] *Quihuis v. State Farm Mut. Auto. Ins. Co.*, 235 Ariz. 536 ¶ 27, 334 P.3d 719 (2014) *(quoting* Kepner v. W. Fire Ins. Co.*, 109 Ariz. 329, 331, 509 P.2d 222, 224 (1973)); *see also* *Teufel v. Am. Family Mut. Ins. Co.*, 244 Ariz. 383 ¶ 11, 419 P.3d 546 (2018).

[71] *Regal Homes, Inc. v. CNA Ins.*, 217 Ariz. 159, ¶ 19 171 P.3d 610 (Ct. App. 2007).

[72] *California Cas. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 185 Ariz. 165, 168, 913 P.2d 505, 508 (Ct. App. 1996), underline corrected (Feb. 28, 1996) ("an insurer's duty to defend is determined by the language of the insurance policy.").

including those potentially not covered and those that are groundless, false, or fraudulent."[73]  The insurer has a duty to defend the entire suit "because it is impossible to determine the basis upon which the plaintiff will recover (if any) until the action is completed."[74]  Applying these rules to the Policy and allegations of the *Baughn* Suit's Complaints demonstrate that Staker qualifies as an insured under the Policy (with no exclusions precluding coverage) so Scottsdale owed a duty to defend Staker in the *Baughn* Suit and Scottsdale breached the Policy in denying Staker's tenders of the *Baughn* Suit.

> **D.    Scottsdale owed a duty to defend Staker for the claims alleged against it in the Initial Complaint Filed in the *Baughn* Suit.**
>
> > **1.    Staker qualifies as an insured under Section 1.b. of the Who Is An Insured provision of the Policy by using, with BDR's permission, BDR's covered autos operated by Baughn to transport Staker's materials within the Mine.**

The Insurance Policy provides liability coverage to "an insured" for damage of bodily injury or property damage "caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'."[75]  An "insured" is defined as "any person or organization qualifying as an insured in the Who is An Insured provision of the applicable coverage."[76]  The Who Is An Insured Provision of the Policy, provides, that subject to certain exceptions (discussed below in Subsection 2.), "the following are insureds: . . . **b.**  Anyone else while using with your permission

---

[73] *Teufel v. Am. Family Mut. Ins. Co.*, 244 Ariz. 383, ¶ 11, 419 P.3d 546, 548 (2018); *see also Scottsdale Ins. Co. v. Van Nguyen*, 158 Ariz. 476, 763 P.2d 540 (Ct. App. 1988) (finding that an uncovered, concurrent cause of harm does not defeat coverage if there is a separate, covered cause of harm).

[74] *Lennar Corp. v. Auto-Owners Ins. Co.*, 214 Ariz. 255, ¶ 15, 151 P.3d 538, 544 (Ct. App. 2007), rev'd, 227 Ariz. 238, 256 P.3d 635 (Ct. App. 2011).

[75] Auto Coverage Form at p. 2 of 14 (SCOTTSDALE000062), Ex. G.

[76] *Id.* at p. 13 of 14 (SCOTTSDALE000074), Ex. G.

a covered "auto" you own, hire or borrow . . . ."[77]  Staker qualifies as an insured under subsection 1.b. of the Who Is An Insured" provisions as an organization "using" with BDR's permission BDR's covered autos in the transportation of Staker's rock and dirt materials which Baughn was doing when the covered trailer picked up a rock from the Mines' road, lodging between one of its rear dual tires, and allegedly beginning the chain of events which caused the Accident injuring Baughn.

The Policy does not specifically define Section 1.b.'s term "using" so we need to consider how Arizona defines the term.  "Arizona courts have broadly construed the concept of 'using' an insured vehicle," and include within the meaning of that term " 'any activity involved in the utilization of the covered vehicle in the manner intended or contemplated by the insured.'"[78] The term use includes "more than driving or riding in an automobile" and extends to utilizing the vehicle "as an instrumental means to an end" as intended or contemplated by the insured.[79]  For example, Arizona courts have held that the following conduct as "using" an insured vehicle: (1) conduct of an employee of a business, who negligently closed valve on storage tank during unloading oil from insured vehicle, allowing hot oil to spray on plaintiff, is "using" to trigger coverage for the business[80]; (2) conduct of a driver of a tow truck towing the insured vehicle and

---

[77] *Id.* at p. 3 of 14 (SCOTTSDALE000064), Ex. G.

[78] *United Fin. Cas. Co. v. Associated Indem. Corp.*, No. 1 CA-CV 15-0564, 2016 WL 6518491, at *2 (Ariz. Ct. App. Nov. 3, 2016) (*quoting Westfield Ins. Co. v. Aetna Life & Cas. Co.*, 153 Ariz. 564, 568 (App. 1987) (citing with approval 12 Couch, *Cyclopedia of Insurance Law* § 45:325, at 668 (2d Ed. 1981)).

[79] Chavez v. Arizona Sch. Risk Retention Tr., Inc., 227 Ariz. 327, 330, 258 P.3d 145, 148 (Ct. App. 2011).

[80] *See Mission Ins. Co. v. Aid Ins. Servs.*, 120 Ariz. 220, 220, 585 P.2d 240, 240 (1978).

causing accident, is "using" insured vehicle to trigger coverage for tow truck business[81]; and (3) conduct of person failing to secure a dog in insured vehicle's cargo area which caused injury, is using insured vehicle to trigger coverage.[82]

Applying the foregoing analysis made by Arizona courts of the term "using" to the present case's alleged facts demonstrates that Staker was "using the covered autos with BDR's permission for transportation of its materials such that Staker qualifies as an insured under Section 1.b. of the Policy's Who Is An Insured provisions. The Initial Complaint's allegations in the *Baughn* Suit show the following ways in which Staker was "using" the covered autos of the tractor and trailer with BDR's permission. First, Staker was using BDR's covered autos, driven by Baughn, for loading and unloading dirt and rock at the various areas of the Mine.[83] Second, Staker was using BDR's covered autos, driven by Baughn, to haul the dirt and rock along the Mine's roads transporting it between the various processing areas of the Mine.[84]

The Initial Complaint alleges that Staker's conduct of overloading or uneven loading of the rock and dirt into the covered trailer is negligent conduct resulting in the Accident and Baughn's injuries.[85] And the Initial Complaint alleges that Staker's conduct of not adequately maintaining the conditions of the Mine's road, allowing the covered trailer's tires to pick up rocks, is alleged negligent conduct resulting in the Accident and Baughn's injuries.[86] These alleged facts

---

[81] *See Westfield Ins. Co. v. Aetna Life & Cas. Co.*, 153 Ariz. 564, 568, 739 P.2d 218, 222 (Ct. App. 1987).

[82] *See Farmers Ins. Co. of Arizona v. Till*, 170 Ariz. 429, 431, 825 P.2d 954, 956 (Ct. App. 1991).

[83] *See* Initial Complaint at ¶ 12, Ex. A ("On January 29, 2014, prior to and until at least the accident, Staker was the mine operator and loaded dirt and rock onto the truck trailer driven by Baughn and other drivers, including BDR co-employee of Baughn.").

[84] *See id.* at ¶¶ 11-12, 18, 24-25, Ex. A.

[85] *See id.* at ¶¶ 16-17, 19, 22-23, Ex. A.

[86] *See id.* at ¶¶ 18, 24-29.

demonstrate that Staker is "using" with BDR's permission, BDR's covered autos and qualifies as an "insured" under Section 1.b.'s language "Anyone else while using with your permission a covered "auto" you own.".[87]

> **2. The allegations made against Staker in the Initial Complaint regarding failure to adequately maintain the Mine's road for the safe use and operation of BDR's covered auto fall outside the scope of Section 1.b.(4)'s insured exception to coverage "while moving property to or from a covered auto".**

Since Staker qualifies as an insured under Section 1.b. of the Policy's Who Is An Insured provision, Section 1.b.'s exceptions which remove a person's or entity's status as an insured, come into play and need to be considered. Indeed, Scottsdale denied coverage to Staker based on the exception contained in 1.b.(4).[88] The Policy's Section 1.b.(4) provides:

> **1. Who Is An Insured**
>
> The following are "insureds":
>     \*   \*   \*   \*
> **b.** Anyone else while using with your permission a covered "auto" you own, hire, or borrow except:
>     \*   \*   \*   \*
> **(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), a lessee or a borrower of a covered "auto" or any of their "employees", while moving property to or from a covered "auto".[89]

Subsection (4) excepts persons and organizations from being an insured under the Policy for an accident resulting from use of a covered auto, "while moving property to or from a covered 'auto'".[90] Scottsdale denies that it owes coverage to Staker asserting that Exception (4) applies to

---

[87] Auto Coverage Form at p. 3 of 14 (SCOTTSDALE000064), Ex. G.

[88] *See* Letter from Scott W. McMickle and Jonathan J. Kandell to M. Craig Hall, dated March 26, 2015, at 8 (STAKER000349), Ex. K.

[89] Auto Coverage Form at p. 3 of 14 (SCOTTSDALE000064), Ex. G.

[90] *Id*.

all of the claims alleged against Staker in the *Baughn* Suit. In its denial letters, Scottsdale states that Staker and Gamez "do not otherwise qualify as insureds under the policy because they are not using a covered auto and, to the extent they were, such use was in the form of loading property to a covered auto. Pursuant to paragraph A.1.b.(4) of the "Who Is Insured" Section of the Policy, S&P and Mr. Gamez do not qualify as insureds."[91]

In taking the foregoing position denying coverage to Staker, Scottsdale fails to recognize and acknowledge that Staker's use is not solely in the form of loading or moving property (dirt and rock) to or from a covered auto. Rather, Staker's use is also in the form of the covered autos transporting Staker's property (dirt and rock) along the Mine's road to the different areas of the Mine for processing. That transportation use of BDR's covered autos is alleged in the Initial Complaint to be the means by which a rock becomes lodged in the covered trailer's tires, starting the chain of events which lead to the Accident and Baughn's injuries. The Initial Complaint alleges that Staker is negligent and liable to Baughn in causing the Accident by inadequately "maintaining conditions at the Ina Pit Road which allowed trailer tires to pick up rocks which had not been cleared by sufficient road maintenance."[92] Such transportation use of the covered autos by Staker does not fall within the scope of Subsection 1.b.(4)'s exception to insured status of "anyone . . . while moving property to or from a covered "auto".

In its denial letter, Scottsdale cites to a 1994 Arizona Court of Appeals case, *Wilshire v. Home Ins. Co.*,[93] as authority for enforcement and application of Section 1.b.(4) to deny coverage

---

[91] *See* Letter from Scott W. McMickle and Jonathan J. Kandell to M. Craig Hall, dated March 26, 2015 at p. 8 (STAKER000349), Ex. K.
[92] Initial Complaint at ¶ 24, Ex. A.
[93] *Wilshire Ins. Co. v. Home Ins. Co.*, 179 Ariz. 602, 880 P.2d 1148 (Ct. App. 1994).

to Staker.[94]  In *Wilshire*, the plaintiff, Johnson, delivered to a customer, Cimetta, a trailer load of pipe attached to a tractor which was a covered auto under an automobile policy issued by Wilshire Insurance Company to Johnson's employer.  While Cimetta's employees were unloading pipe from the trailer a pipe section rolled off the trailer hitting Johnson.[95]

Johnson sued Cimetta claiming negligence of its employees and Cimetta tendered defense to Wilshire as a permissive user of the covered auto.  Wilshire defended Cimetta under a reservation of rights, but asserted that there was no coverage because the Policy's exception to coverage for a permissive user "while moving property to or from a covered auto" applied to the claims against Cimetta since its employees were unloading the pipe from the covered auto when Johnson was injured.

Wilshire sued to enforce the exception and cross motions for summary judgment were filed.  The issue on summary judgment was the enforceability of the exception under Arizona's Uniform Safety Responsibility Act ("Act") permissive user coverage requirements of A.R.S. § 28-1170(B)(2), and the trial court ruled that the exception was not enforceable under the Act.[96]

On appeal the Arizona Court of Appeal reversed the trial court's decision.  The court first found that the Wilshire policy was issued pursuant to provisions of the Act for motor carriers with vehicles over 20,000 pounds and such provisions do not require complete omnibus coverage as do the Act's provisions for passenger vehicles.[97]  The court then ruled that the permissive user coverage requirements of § 28-1170(B)(2) did not apply to the Wilshire Policy so the exception of

---

[94] *See* Letter from Scott W. McMickle and Jonathan J. Kandell to M. Craig Hall, dated March 26, 2015 at p. 8 (STAKER000349).
[95] *See Wilshire*, 880 P.2d at 1149.
[96] *See id.*
[97] *See id.*, at 1150.

coverage for permissive users "while moving property to and from a covered auto" was valid and enforceable so Cimetta was not entitled to coverage.[98]

The *Wilshire* case is distinguishable from this case and does not support Scottsdale's denial of coverage. The *Wilshire case* holds that an exception identical to Section 1.b.(4) is enforceable under the Arizona law. The Court in *Wilshire*, however, never addressed the question which is before this Court, which is whether all of the alleged facts and claims made against the entity seeking insured status fall within the scope of 1.b.(4)'s exception to completely remove insured status for the permissive user of the covered auto. That question did not need to be addressed in *Wilshire* because Johnson was injured when Cimetta's employees were moving the pipes from the covered auto and alleged negligence based solely on that conduct. Here the alleged facts are different from the facts in *Wilshire*.

In this case, Baughn was not injured "while [Staker was] moving property to or from the covered auto." Rather, the Initial Complaint alleges that Baughn was injured while hammering a rock which was caught between one of the rear sets of dual tires of the covered trailer and such rock had been picked up when Baughn drove the covered trailer along the Mine's road.[99] Those facts, unlike the facts alleged in *Wilshire*, fall outside of the scope of Section 1.b.(4). Additionally, while the Initial Complaint alleges that Staker is negligent in the way it loaded BDR's covered trailer, arguably fall within the scope of Section 1.b.(4)'s exception, the Initial Complaint also alleges that Staker is negligent for inadequately maintaining the Mine's road. The alleged conduct of Staker in failing to maintain the road falls outside of the scope's Section 1.b.(4)'s language of

---

[98] *See id*. at 1151.
[99] *See* Initial Complaint at ¶¶ 24-29, Ex. A.

"[a]nyone . . . while moving property to or from a covered auto" so Staker maintains its status and qualifies as an insured under Section 1.b.

The facts in this case are similar to facts found in the 2018 case of *National Casualty Co. v. S. Shore Iron Works, Inc.* where the U.S. District Court for the Northern District of Illinois found that exception 1.b.(4) did not preclude steel manufacturer from being a permissive user insured under a trucking company's auto policy.[100]  In *South Shore*, a steel manufacturer hired a trucking company to transport steel from its facility in Chicago to Rochelle, Illinois. Employees of the steel manufacturer would load steel onto flatbed trailers and the trailers would be attached to the trucking company's tractors and driven by the trucking company to Rochelle. On one occasion, a trucking company's employee was securing a load of steel beams for transport, after the trailer had been fully loaded by the steel manufacturer's employees, and was injured in the process.[101]

The employee sued the steel manufacturer and the manufacturer tendered the suit to the trucking company's auto insurer.  The auto insurer denied the tender and eventually filed a declaratory judgment suit asserting that it did not owe coverage to the steel manufacturer because: 1) the manufacturer was not "using" the covered tractor to qualify as an insured; and 2) even if it was using the covered tractor to qualify as an insured, the insured exception, Section 1.b.(4), applied to preclude coverage.[102]  The parties filed cross motions for summary judgment.

As to the above-coverage issues, the district court found in favor of coverage for the steel manufacturer.  The district court first found that the steel manufacture was "using" the trucking company's tractor qualifying it as an insured under the Policy:

---

[100] *Nat'l Cas. Co. v. S. Shore Iron Works, Inc.*, 341 F. Supp. 3d 884 (N.D. Ill. 2018).
[101] *See id.* at 887.
[102] *See id.* at 888 and 891-93.

There is no dispute that South Shore hired GD Carriers to provide the tractor to transport a load of steel to the Rochelle Project.  There is also no dispute that prior to Delgado's injury, he connected the tractor to the trailer while it was being loaded at South Shore's facility and that he was securing the load of Steel beams in preparation for transport when he fell and was injured.

       \*   \*   \*   \*

The Court concludes that South Shore was an insured under the Policy because it was "using" GD Carrier's tractor at the time of Delgado's injury . . . .[103]

The district court next addressed the exception 1.b.(4), finding that it did not apply because the plaintiff's injury did not occur while the insured were moving property to the covered auto:

> Here, it is undisputed that the trailer was *not* being loaded at the time of Delgado's injury.  South Shore had finished loading the trailer and Delgado was securing the load for transport at the time he was injured.  Accordingly, the above exception does not remove South Shore's insured status because it only applies "while [the insured is] is *moving property* . . . National Casualty points to no other exception in the policy that would remove South Shore's insured status as a permissive user of GD Carrier's tractor.[104]

Applying the *South Shore* decision to our case's facts demonstrates that this Court should find that Staker is an insured under Section 1.b. and the exception found in Subsection (4) does not apply to remove Staker's status as an insured.  Like the steel manufacturer's use of GD Carrier's tractor for transportation, Staker's use of BDR's covered autos for transportation of its dirt and rock along the Mine's road and between its processing areas is "using" qualifying Staker as a permissive user insured.  Additionally, like the facts found in *South Shore,* Staker was not moving property to or from the covered auto at the time of Baughn's injury.  Baughn's injury occurred while he was stopped in the pit yard and while he was using a hammer to dislodge a rock which had been picked up from the Mine's road during transport.  Those facts do not fall within

---

[103] *Id*. at 891-92.
[104] *Id*. at 892.

Subsection (4)'s exception to remove Staker's status as an insured. Therefore, Scottsdale owed

Staker a duty to defend Staker in the *Baughn* Suit as a permissive insured under the Policy.

### 3. The allegations made against Staker in the Initial Complaint regarding failure to adequately maintain the Mine's road fall outside the scope of Policy's Mechanical Device Exclusion.

Scottsdale additionally denied Staker's tenders of the *Baughn* Suit asserting that even if

Staker qualified as an insured "coverage still would not exist due . . . to, the 'Movement of

Property By Mechanical Device' exclusion."[105]  That exclusion ("Mechanical Device Exclusion"

or "Exclusion") provides that coverage is precluded for bodily injury "resulting from the

movement of property by a mechanical device (other than a hand truck) unless the device is

attached to the covered 'auto'."[106]  Scottsdale has not stated how the Mechanical Device

Exclusion applies beyond the above-quoted statement, however, Staker assumes Scottsdale finds

that the allegations made against Staker regarding loading dirt and rock onto the covered trailer

involved a mechanical device and falls within the Exclusion.

The Mechanical Device Exclusion arguably applies to the allegations that Staker unevenly

loaded or overloaded material into the covered trailer, but the Exclusion does not apply to all

claims made against Staker in the Initial Complaint.  As explained above in Sections 1. and 2. of

this Argument, the Initial Complaint alleges claims against Staker regarding its duty to maintain

a reasonably safe mine road and its alleged failure in upholding that duty resulting in a rock being

picked up and lodged in the covered trailer Baughn was operating which led to the Accident.[107]

---

[105] Letter from Scott W. McMickle and Jonathan J. Kandell to M. Craig Hall, dated March 26, 2015 at p. 8 (STAKER000349), Ex. K.
[106] Auto Coverage Form at p. 5 of 14 (SCOTTSDALE000066), Ex. G.
[107] *See* Initial Complaint at ¶¶ 18 and 24, Ex. A.

Those allegations do not involve any movement of property by a mechanical device and therefore they do not fall within the scope of the Mechanical Device Exclusion.

The foregoing analysis demonstrates that the allegations made against Staker in the Initial Complaint prove that: 1) Staker qualifies as an insured under Section 1.b. of the Policy[108]; 2) Section 1.b.(4)'s exception does not apply to and remove insured status from Staker; and 3) the Mechanical Device Exclusion does not apply to all claims made against Staker by Baughn.  Based on those findings, Scottsdale owed a duty to defend Staker under the Policy for the claims made against it in the *Baughn* Suit.

> **E.**   **Scottsdale also owes coverage to Staker for the additional facts alleged in the Amended Complaint against Staker for negligent training of workers regarding safety procedures when a rock is lodged between vehicle tires.**

In March 2015, Baughn filed an Amended Complaint asserting new allegations of negligence against Staker in addition to those concerning loading and failure to maintain the Mine road.  The new allegations assert that Staker and BDR failed to provide training on safety

---

[108] Staker qualifies as an insured under Section 1.b. of the Policy and is entitled to coverage based on that circumstance.  Because of that insured status, the Designated Insured Endorsement listing Western Rock Products, Staker's d/b/a, is also satisfied.  The Designated Insured Endorsement provides: "Each person or organization shown in the Schedule is an 'insured' for Liability Coverage, but only to the extent that person or organization qualifies as an 'insured' under the Who Is An Insured Provision . . . ."  CA 20 48 02 99 at p. 1 of 1 (SCOTTSDALE000088), Ex. G.  With that said, the Designated Insurance Endorsement's application to this Suit is not necessary for the Court to grant summary judgment in favor of Staker.  Reviewing the language of the Designated Insured Endorsement reveals that it is circular in nature and courts have found that no real insurance status is bestowed by the endorsement. *See e.g., Ryder Truck Rental, Inc. v. Nat'l Fire Ins. Co. of Hartford*, 246 F. Supp. 3d 1231, 1236 (E.D. Wis. 2017) (analyzing identical language and noting, "The plain language of the designated-insured endorsement does not grant a 'designated insured' any coverage that would not exist in the endorsement's absence.").

procedures to employees working in the Mine, including safe procedures to use "if a truck in the mine picked up rocks, including a rock which may become lodged between dual tires."[109]

Scottsdale and its coverage counsel learned of and received the Amended Complaint when Staker retendered the *Baughn* Suit to Scottsdale in July 2016. [110]  Staker asserted that the training allegations fall within Section 1.e. of the Who is Insured provision providing that a person or organization qualifies as an insured if they are "liable for the conduct of an 'insured' described above [sections 1.a. through 1.d.] but only to the extent of that liability."[111] Scottsdale reviewed the additional training allegations in connection with Staker's retender and denied that Section 1.e. applied to the training allegations "because it is abundantly clear that [Staker] is being sued for its own negligence and not for vicarious liability for any negligence of BDR.[112]

Whether or not Scottsdale's position regarding Section 1.e. is correct, Scottsdale's overall analysis and decision to deny coverage to Staker for the Amended Complaint is wrong.  Scottsdale failed to recognize that the additional negligent training allegations also fall within and qualify Staker as an insured under Section 1.b.  As shown in Section D.1. above, Staker is using with BDR's permission, the tractor and trailer operated by Baughn (covered autos) for transportation of Staker's rock and dirt along the Mine's roads to its various processing areas, therefore triggering Section 1.b.  Furthermore, like the circumstance that the allegations made against Staker for failure to maintain the Mine Road do not fall within the "moving property" exception of 1.b.(4), the

---

[109] Amended Complaint at ¶ 14; *see also id*. ¶¶ 13, 15-16, 35-37, Ex. F.
[110] *See* Letter from M. Craig Hall to Scott W. McMickle, dated July 11, 2016 (MKB001379-MKB001381), Ex. M.
[111] *Id*. at MKB001379.
[112] *See* Letter from Scott W. McMickle and Jonathan J. Kandell to M. Craig Hall, July 29, 2016 at p. 6 (MKB001198), Ex. N.

negligent training allegations also do not fall within Section 1.b.(4) exception.  Nor do such negligent training allegations fall within the Mechanical Device exclusion or any of the other exceptions or exclusions to coverage.  As such, Staker qualifies as an insured under the Policy and is entitled to coverage.

In light of the foregoing, this Court should grant summary judgment in favor of Staker on its First and Fourth Causes of Action for breach of contract and declaratory judgment, finding as a matter of law, that Scottsdale owed a duty to defend Staker for the claims alleged against it the *Baughn* Suit and Scottsdale breached that contractual duty owed under the Insurance Policy by denying coverage to Staker.

### F.    Since Scottsdale breached the Policy, the Court should grant Staker recovery of the fees and costs incurred in the *Baughn* Suit, and recovery of fees and costs being incurred in this Suit pursuant A.R.S. § 12-341.01.

As shown above, Scottsdale owed a duty to defend Staker as an insured under the Policy for the claims asserted against it in the *Baughn* Suit and breached the Insurance Policy in denying a duty to defend Staker.  As a result of Scottsdale's breach, Staker was forced to incur attorneys' fees and costs in the *Baughn* Suit which Scottsdale owes to Staker under the Policy.

Additionally, as a result of Scottsdale's breach of the Insurance Policy, Staker was forced to file this Suit and incur attorneys' fees and costs to show Scottsdale's breach.  Arizona law allows for the award of attorneys' fees and costs to a successful party in a contract action.  Section 12-341.01 of the Arizona Revised Statutes provides: "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees. . . .[113] Arizona courts have recognized the application of Section 12-341.01 to cases involving insurance

---

[113] A.R.S. § 12-341.01.

policies.[114]  The award is at the discretion of the trial court and there are seven factors which are

considered in determining if an award is appropriate:

> (1) the merits of the claim or defense the unsuccessful party presented; (2) whether the parties could have avoided or settled the litigation and whether "the successful party's efforts were completely superfluous in achieving the result"; (3) whether assessing fees against the unsuccessful party will cause an extreme hardship; (4) whether the successful party prevailed on all relief sought; (5) the novelty of the legal questions presented; (6) whether the claims or defenses had been previously adjudicated in Arizona; and (7) whether an award of fees would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorney fees.[115]

Applying the foregoing factors to this Suit shows that Staker is entitled to an award under

Section 12-341.01 because: 1) Scottsdale's denial of coverage did not have merit as shown above;

2) this litigation could have been avoided had Scottsdale properly analyzed coverage; 3) Awarding

fees against Scottsdale will not cause it extreme hardship; 4) Staker prevailed in showing that

Scottsdale owed a duty to defend Staker and breached that duty; 5) The legal questions presented

here are not novel; 6) The permissive user claims have been adjudicated in Arizona, but this exact

claim has not; and 7) An award will not discourage insurers or insureds from litigating tenable

claims or defenses.  Should the Court grant and order Staker's request for recovery of fees and

costs under the Policy and fees and costs pursuant to A.R.S. § 12-341.01, Staker will file a Motion

under DUCivR 54-2.

---

[114] *See e.g.*, *Navigators Specialty Ins. Co. v. Nationwide Mut. Ins. Co.*, 50 F. Supp. 3d 1186, 1199 (D. Ariz. 2014); *Ventana Med. Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*, 2010 WL 1752509, at *24 (D. Ariz. 2010); *Progressive Classic Ins. Co. v. Blaud*, 132 P.3d 298 (Ct. App. 2006).
[115] *Ventana Med. Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*, 2010 WL 1752509, at *24.

## V.  CONCLUSION

In light of the foregoing, Staker respectfully requests this Court for an order granting partial summary judgment in its favor on Staker's First and Fourth Causes of Action for Breach of Contract and Declaratory Judgment, that no genuine issues of material fact exist and as a matter of law: 1) Scottsdale owed a duty to defend Staker under a commercial automobile policy issued to named insured BDR Transport for the claims alleged against Staker in the *Baughn* Suit; 2) Scottsdale breached the Policy in denying Staker's tender of the *Baughn* Suit; and 3) As a result of Scottsdale's breach of the Policy, Staker is entitled to recover from Scottsdale: (a) attorneys' fees and litigation costs it incurred in the *Baughn* Suit; and (b) attorneys' fees and litigation costs incurred in this Suit pursuant to Arizona Revised Statutes § 12-341.01.

DATED this 29th day of January 2021.

CHRISTENSEN & JENSEN, P.C.


*/s/ Rebecca L. Hill*
Rebecca L. Hill
George W. Burbidge
*Attorneys for Plaintiff Staker & Parson*
*Companies, Inc. d/b/a Western Rock Products*

### CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of January, 2021, the foregoing **PLAINTIFF STAKER & PARSON COMPANIES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT** was filed electronically utilizing the CM/ECF system which sent notification of such filing to the following:

Mark L. Anderson, manderson@gapclaw.com
Timothy J. Curtis, tcurtis@gapclaw.com
GOEBEL ANDERSON, PC
405 South Main Street, Suite 200
Salt Lake City, Utah 84111
*Attorneys for Scottsdale Insurance Company*


*/s/ Michelle D. Donohoo*